ORIGINAL

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>10-2188 |
|---|---|

| PLAINTIFFS<br>*Julie Evans Chapman* | DEFENDANTS<br>*Mike Allen Evans* |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Larry C. Oldham (Larry C. Oldham, P.C.)<br>410 Pirkle Ferry Road, Suite K-500<br>Cumming, GA 30040  (770)889-8557 | ATTORNEYS (If Known)<br>William A. Rountree (Macey Wilensky et al)<br>230 Peachtree Street, Suite 2700<br>Atlanta, GA 30303  (404)584-1244 |
| PARTY (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☑ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Objection to Dischargeability of Certain Debts of Debtor*

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [ ] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [ ] 13-Recovery of money/property - §548 fraudulent transfer
- [ ] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- [x] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- [ ] 71-Injunctive relief – imposition of stay
- [ ] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

NOV 29 2010 16:08:00
DEPUTY CLERK
REGINA THOMAS, CLERK
FILED
CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

...

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Mike Allen Evans | BANKRUPTCY CASE NO.<br>10-23809 - reb | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northen District of Georgia | DIVISION OFFICE<br>Gainesville | NAME OF JUDGE<br>Robert Brizendine |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>11/29/10 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Gary C. Odell | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

**FILED**
IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

23804

IN RE:

CASE NO.: 10-21908-reb

MIKE ALLEN EVANS,

Debtor.

H. REGINA THOMAS.
CLERK

BY: _KJ_
DEPUTY CLERK

JULIE EVANS CHAPMAN,

Plaintiff,

v.

MIKE ALLEN EVANS,

Defendant.

Chapter 7

Judge:    Robert E. Brizendine

Adversary Proceeding No. _____
Objecting to Discharge of Certain
Debts of Debtor

**10-2188**

**COMPLAINT OBJECTING TO
DISCHARGE OF CERTAIN DEBTS OF DEBTOR**

COMES NOW Plaintiff Julie Evans Chapman pursuant to Rule 7001, et seq.

of the Federal Rules of Bankruptcy Procedure and files her Complaint Objecting to

Discharge of Certain Debts of Debtor/Defendant Mike Allen Evans, showing the

Court the following:

L:\DOCS\OAS\CHAPMAN\7ADVERSA.COM

1.

Defendant is subject to the jurisdiction and venue of this Court by virtue of

having filed herein a Voluntary Petition seeking protection of Chapter 7 of the

United States Bankruptcy Code.

2.

Plaintiff is the former wife of Defendant, the parties having been divorced by

virtue of the entry of a Final Judgment and Decree of Divorce in the Superior Court

of Forsyth County, Georgia on January 4, 2004 in a certain Action styled

Julie J. Evans v. Mike A. Evans, Civil Action File No. 03-CV-1015, Superior Court

of Forsyth County, Georgia (the "Divorce Action").

3.

Plaintiff and Defendant were married on July 12, 1986 and lived together as

husband and wife until separating on April 10, 2001.

4.

At the time the parties separated, Defendant agreed to match Plaintiff's then

current monthly income of $2,109.64 as a temporary support payment.

5.

Defendant continued to make the temporary support payments up until the

time that the divorce of the parties was finalized.

6.

As part of their divorce proceeding, the parties entered into a certain

Settlement Agreement dated June 9, 2003 which was filed in the Action on June 16,

2003 and incorporated into the Final Judgment and Decree of Divorce entered by

the Court. A true and correct copy of the Final Judgment and Decree of Divorce is

attached hereto as Exhibit A and incorporated herein by this reference, and a true

and correct copy of the Settlement Agreement is attached hereto as Exhibit B

and incorporated herein by this reference.

7.

At the time the parties entered into the Settlement Agreement, they had two

daughters of tender years, being Lauren Amy Evans (born January 5, 1990), and

Faith Nicole Evans (born January 26, 1994) (the "Children").

8.

At the time the parties entered into the Settlement Agreement, Defendant was

a former politician, developer and builder with assorted business interests and

Plaintiff was an elementary school teacher.

9.

While Plaintiff had assisted Defendant with the administrative and book-

keeping functions with his business interests over the years, the business interests

and partnerships of Defendant were quite complex and included a fair amount of

leverage so that they were not capable of being equitably divided between the

parties in a manner that would maintain the financial stability of both parties.

10.

The primary focus of the parties was making the divorce as amicable as

possible in order to minimize the impact of the divorce on the Children and to

minimize the negative financial effects of the divorce on Defendant's business

interests and the overall financial stability of both of the parties.

11.

There was a large disparity in the respective incomes of the parties at the time

they entered into the Settlement Agreement, with Defendant claiming annual gross

income of $200,000.00 for purposes of determining his support obligation and

Plaintiff claiming approximately $50,000.00.

12.

At the time the parties entered into the Settlement Agreement, it was

contemplated by both of them that the Children and Plaintiff would need to be

supported for a number of years in order to get the Children through their college

years and the focus of the Settlement Agreement was to provide for the support of

the Children and the Plaintiff during that time.

13.

As part of the resolution of their marital estate, the parties agreed that

Plaintiff would need (and should receive), periodic payments over a number of

years in order to support herself and the Children in accordance with the standards

to which they had become accustomed during the marriage.

14.

Effective January 1, 2003, Defendant began making periodic support

payments to Plaintiff in the amount of $2,109.64 each (the "Monthly Payment")

which were to continue for a period of fifteen years.

15.

The Monthly Payment was the amount necessary, when coupled with the

income that Plaintiff made as a teacher, to pay for the home that Plaintiff and the

Children occupied and to support all of them in reasonable comfort and same was in

the contemplation of both of the parties at the time they entered into the Settlement

Agreement.

16.

In addition to the Monthly Payment, Defendant agreed to pay the sum of

$600.00 per month as support for the Children, which amount was substantially less

than would have been required by the child support guidelines for the State of Georgia then in effect.

17.

The Settlement Agreement contained other provisions that were negotiated by the parties regarding the maintenance, support and education of the Children and Defendant's obligations to pay for same, with the parties entering into terms and conditions that would meet the approval of the Superior Court of Forsyth County, Georgia while also providing each of them (and especially Defendant) with maximum flexibility regarding the support of the Children and Plaintiff.

18.

The parties structured the Monthly Payments to Plaintiff as equitable division of their marital property, with Defendant agreeing to pay a certain amount amortized over a period of time at a specified interest rate, all of same being calculated so at to provide Plaintiff with the same Monthly Payment she had been receiving since the separation of the parties in April of 2001.

19.

The parties selected the structure of Defendants domestic support obligation as the Monthly Payments and not as lump sum alimony and as equitable division of property in order to allow the best possible tax  treatment for both parties.

20.

As part of the bargain between the parties, Defendant also agreed to pay for

higher education for the Children and to fund an account to provide additional

support and cover expenses that the parties anticipated would be incurred by the

Children during the course of their rearing and higher education.

21.

The structure of the payments and the periodic nature of the Monthly

Payments was a material inducement to Plaintiff entering into the Settlement

Agreement and accepting the terms thereof and Defendant received a substantial

benefit as a result of Plaintiff's willingness to do so.

22.

The provisions made for Plaintiff (and the Children) in the Settlement

Agreement were intended by the parties to be domestic support in the nature of

alimony, maintenance, or support, regardless of the form used by the parties therein.

23.

Plaintiff is listed as a creditor of Defendant on Schedule F of his bankruptcy

petition with a claim in and unspecified amount and he is thus attempting to

discharge his debt to her.

24.

Plaintiff shows that Defendant is not entitled to a discharge of the debt owed

to them by virtue of 11 U.S.C.A. §§ 523(a)(5) and 727(b) as a result of the

indebtedness due to Plaintiff being a domestic support obligation, with those

Sections provide that a discharge under 11 U.S.C.A. § 727 does not discharge an

individual debtor from such obligations.

25.

To allow Defendant's obligations of domestic support to be discharged

through a bankruptcy is contrary to the intentions of the parties at the time they

entered into the Settlement Agreement and deprives Plaintiff of the benefit of her

bargain as set forth therein.

26.

Plaintiff shows that Defendant has failed to make any Monthly Payments to

her since June 1, 2008.

27.

Plaintiff further shows that Defendant has failed and refused to pay other of

his obligations pursuant to the Settlement Agreement, including requirements that

he pay for the higher education of the Children.

28.

Plaintiff shows that while she has agreed to work with Defendant in some respects and has been extremely patient with him, much of Defendant's failure and refusal to meet his obligations has been willful and in contempt of his obligations as set forth in the Final Judgment and Decree entered in the Divorce Action, all to be more particularly shown in the context of this Action;

WHEREFORE, Plaintiff respectfully requests that the Court grant her the following relief:

(a)  That this Court look into and sustain their allegations;

(b)  That this Court enter an order determining that the debt listed by Defendant as owed to Plaintiff is not dischargeable in bankruptcy;

(c)  That this Court find Defendant in contempt of his obligations as set forth in the Final Judgment and Decree entered in the Divorce Action and provide Plaintiff with appropriate relief by requiring Defendant to comply with the terms and conditions of the Settlement Agreement; and

(d)  That the Court grant them such other and further relief as it deems appropriate.

Submitted as of November 29, 2010.


Respectfully submitted,

LARRY C. OLDHAM, P.C.

Larry C. Oldham
Georgia State Bar No. 551455
Attorneys for Plaintiff

416 Pirkle Ferry Road
Suite K-500
Cumming, Georgia  30040
(770) 889-8557 (phone)
larryoldham@lcopc.com

# EXHIBIT A

FORSYTH COUNTY GEORGIA
FILED IN THIS OFFICE

JAN 0 6 2004

*Douglas Sorrell*
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF FORSYTH COUNTY

STATE OF GEORGIA

JULIE J. EVANS,

Plaintiff,

v.

Civil Action File No. 03-CV-1015

MIKE A. EVANS,

Defendant.

## FINAL JUDGMENT AND DECREE OF DIVORCE

Upon consideration of pleadings filed by the parties in this Action, the Settlement Agreement entered into between Mike A. Evans ("Husband") and Julie J. Evans ("Wife"), the evidence presented in this Action, upon legal principles and for good cause shown, it is hereby

ORDERED, that a total divorce, a divorce *a vinculo matrimonii*, is granted to Husband and Wife and that the marriage contract heretofore entered into between them, from and after this date, be and is set aside and dissolved as if no such contract had ever been made or entered into; and it is further

ORDERED, that Husband and Wife in the future shall be held and considered as separate and distinct persons altogether unconnected by any nuptial union or civil contract whatsoever; and it is further

ORDERED, that the Settlement Agreement entered into between the parties dated as of June 9, 2003, an original of which was filed with the Court on June 16, 2003 and is part of the record in this Action, is incorporated into and made a part of this Final Judgment and Decree by this reference; and it is further

ORDERED, that all issues relating to alimony, property division, child custody and support, which have been settled between Husband and Wife as set forth in the Settlement Agreement, shall be resolved as specified therein; and it is further

ORDERED, that in determining child support, the Court finds as follows:

Husband's annual gross annual income for the calendar year immediately preceding the filing of the Complaint was approximately $200,000.00 and is expected to be the same or similar for the current calendar year, as evidenced by Husband's Domestic Relations Financial Affidavit on file with the Court.

F:\DOCS\0975\3\17CONS4.EXT

Wife's annual gross annual income for the calendar year immediately preceding the filing of the Complaint was approximately $50,000.00 and is expected to be the same or similar for the current calendar year, as evidenced by Wife's Financial Domestic Relations Financial Affidavit of file with the Court.

There are two minor children born of the marriage of Husband and Wife, being Lauren Amy Evans - age 13 (born January 5, 1990); and Faith Nicole Evans - age 9 (born January 26, 1994).

In this Action, child support is being determined for two children (the "Children").

The applicable percentage of gross income to be considered based upon the applicable Child Support Guidelines set forth in O.C.G.A. § 19-6-15 is:

| Number of Children | Percentage Range of Gross Income |
|---|---|
| 1 | 17% to 23% |
| 2 | 23% to 28% |
| 3 | 25% to 32% |
| 4 | 29% to 35% |
| 5 or more | 31% to 37% |

The Court has considered the existence of special circumstances and has found the following special circumstances marked with an "X" to be present in this case:

   \_\_\_\_   1.   Ages of the Children

   \_\_\_\_   2.   Extraordinary medical costs or needs of the Children in addition to accident and sickness insurance, provided that all such costs or needs shall be considered if no insurance is available

   \_\_\_\_   3.   Educational costs

   \_\_\_\_   4.   Day-care costs

   \_X\_   5.   Shared physical custody arrangements, including extended visitation

   \_\_\_\_   6.   A party's other support obligations to another household

   \_\_\_\_   7.   Income that should be imputed to a party because of suppression of income

_____ 8.  In-kind income for the self-employed, such as reimbursed meals or a company car

_____ 9.  Other support a party is providing or will be providing, such as payment of a mortgage

_____ 10.  A party's own extraordinary needs, such as medical expenses

_X_ 11.  Extreme economic circumstances including but not limited to:

      (A)  Unusually high debt structure; or

      (B)  Unusually high income of either party or both parties, which shall be construed as individual gross income of over $75,000.00 per annum

_____ 12.  Historical spending in the family for the Children which varies significantly from the percentage table

_____ 13.  Considerations of the economic cost-of-living factors of the community of each party, as determined by the trier of fact

_____ 14.  In-kind contribution of either parent

_____ 15.  The income of the custodial parent

_X_ 16.  The cost of accident and sickness insurance coverage for the Children included in the order or Settlement Agreement

_____ 17.  Extraordinary travel expenses to exercise visitation or shared physical custody

_X_ 18.  Any other factor which the trier of fact deems to be required by the ends of justice, as described below:

The parties have agreed to cover the costs incurred on behalf of the Children when in their custody, and each has agreed to waive any right against the other for contribution to the support of the Children other than as set forth in the Settlement Agreement.

; and it is further

      ORDERED, that having found that special circumstances exist, with respect to ordinary costs of the Children, the parties shall be solely responsible for the costs of the Children when the Children are in their custody and under their control, and the parties shall share any extraordinary expenses of the Children as set forth in the Settlement Agreement; and it is further

ORDERED, that each of the parties shall comply with the terms and conditions of the Settlement Agreement; and it is finally

ORDERED, that the costs of these proceedings shall be paid by Wife.

SO ORDERED, this _b_ day of _Jmy_____, 2003. _2004_

_____
David L. Dickinson, Judge
Superior Court of Forsyth County, Georgia

Prepared by:

LARRY C. OLDHAM, P.C.

_____
Larry C. Oldham
Georgia State Bar No. 551455
Attorney for Plaintiff

416 Pirkle Ferry Road
Suite K-500
Cumming, Georgia 30040
(770) 889-8557 (phone)


This is to certify that the above is a true and correct copy of the Final Judgment and Decree entered by the Court in the above-styled Action.

This ___ day of _____, 2003.


_____
Clerk of the Superior Court of
Forsyth County, Georgia

# EXHIBIT B

FORSYTH COUNTY GEORG
FILED IN THIS OFFICE

IN THE SUPERIOR COURT OF FORSYTH COUNTY

**JUN 1 6 2003**

STATE OF GEORGIA

*Douglas Sorrells*
CLERK SUPERIOR COURT

JULIE J. EVANS,

Plaintiff,

v.

MIKE A. EVANS,

Defendant.

Civil Action File No. _03CV-015_

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of June 9, 2003 by and between Mike A. Evans ("Husband") and Julie J. Evans ("Wife");

WHEREAS, the parties are husband and wife, having married on July 12, 1986; and

WHEREAS, the parties have ceased to live together because of irreconcilable differences and are now living in a bona fide state of separation; and

WHEREAS, Wife has filed for divorce in the Superior Court of Forsyth County, Georgia contemporaneously with the execution of this Agreement; and

WHEREAS, there are two (2) minor children born of the marriage of Husband and Wife, being Lauren Amy Evans - age 13 (born January 5, 1990); Faith Nicole Evans - age 9 (born January 26, 1994) (the "Children"); and

WHEREAS, the parties are desirous of amicably settling between themselves all matters pertaining to property division, separate maintenance, alimony, child custody, support, and visitation, attorney's fees and all other rights and obligations arising out of their marriage and separation, or that may otherwise be in issue between them without the necessity of having a trial of this Action; and

WHEREAS, the parties acknowledge that they have had an opportunity to consult with counsel of their choosing (or have elected not to do so) and, after having done so, fully understand the facts in issue concerning this Action;

NOW, THEREFORE, for and in consideration of the mutual promises, covenants, acts, undertakings and agreements of each of the parties with the other, and the benefits flowing to

L:\DOCS\LCOPC\X-MISC\DIVORCE\7EVANS.DV5



each of the parties under the terms of this Agreement, the receipt, sufficiency and adequacy of which are hereby acknowledged, the parties agree as follows:

1.    <u>Living Separate and Apart</u>.  In choosing their places of residence, the parties shall take into account the interests of the Children in having a stable family environment which includes regular and substantial contact with each of them; provided, however, that such consideration shall not require them to forego business or personal opportunities (or to ignore other familial considerations such as helping out in the event of illness, incapacity or substantial need of any relatives of the parties) which either conscience or necessity dictates they should pursue.  Subject to the foregoing caveat, the parties shall live separate and apart, each shall be free from interference, molestation or the exercise of authority and control, direct or indirect, by the other, neither party shall molest, harass or interfere with the other in any manner whatsoever, each party may reside at such place or places as he or she may select, and each may for his or her separate use and benefit engage in any employment, business or profession which he or she may deem advisable.

2.    <u>Contemporaneous Transfers and Further Cooperation</u>.  Contemporaneous with the execution of this Agreement, the parties shall execute any and all documents necessary to transfer title in and to all of the Property (as hereinafter defined) which each may be transferring to the other in mutual satisfaction of their respective property rights, and each execution shall take place immediately.  Each party shall also cooperate with future reasonable requests of the other designed to carry out the intent of this Paragraph.

3.    <u>Rights Regarding the Children</u>.

(a)    <u>Joint Legal Custody</u>.  The parties shall have joint legal custody, care and control of the Children.  It is the intention of the parties in agreeing to this custodial arrangement that each of them shall have a full and active role in providing a sound moral, social, economic, religious and educational environment for the Children.  The parties shall consult with one another on substantial questions relating to third party child-care, religious upbringing, educational programs, significant changes in social environment, and non-emergency health care of the Children.  In accepting the grant of privileges conferred upon them by this custodial arrangement, the parties agree that they shall not use such privileges for the purpose of frustrating, denying or controlling, in any manner, the social development or personal lives of each other.  The parties shall exert their good faith best efforts to work cooperatively, always mindful of the best interests of the Children, in amicably resolving any disputes that may arise between them.

(b)    <u>Conduct of Parties</u>.  The parties shall always conduct themselves in such a manner as to be conducive to the welfare and best interests of the Children, shall confer with each other on all important matters pertaining to the Children's health, welfare, education and upbringing and shall give priority to the Children's best interests over their own personal desires.  Each party shall endeavor to foster a feeling of genuine affection between the Children and the other party, and neither party shall do anything which will or may tend to estrange or alienate the Children from the other party or in any way impair the love and affection of the Children for the



other party. Each party shall encourage the Children to know, love and respect the other party. Both parties agree not to harass, intimidate, threaten or harm each other in any manner, either now or in the future, and both further agree that state that such conduct would constitute irreparable damage and harm for which either of them might bring an action against the other. The same is true regarding the conduct of each party toward the Children, with each party agreeing not to make derogatory and/or inflammatory remarks about the other in the presence of the Children, and both parties agreeing that any such conduct shall constitute irreparable harm upon which an appropriate action can be based.

(c)    Custody and Visitation Schedule. The parties have agreed to share physical custody of the Children in accordance with the agreement set forth herein. Failure of the parties to exercise reasonable efforts to be with the Children during times which are specifically set aside for them in this Paragraph shall constitute a waiver by the parties of the specific times only, and the other party shall not be obligated to make any accommodations to make up for any time lost as a result thereof. Notwithstanding the preceding sentence, the parties shall not lose any of their other specific rights to be with the Children as set forth herein without agreeing to same in writing. The parties shall have specific rights to be with the Children as follows:

(1)    Everyday Custody and Visitation. The parties recognize the necessity and benefit of providing the Children with a stable home environment that provides regular and substantial contact with each of them during everyday life. If there is a conflict between the provisions of this Paragraph and any other provisions of this Agreement which grant custody of the Children to the parties on specific holidays, special occasions and vacation times, the provisions regarding same shall control, and the parties shall reasonably accommodate each other in making up any lost time. The parties have shared the custody of the Children since the time of their separation and wish to continue to do so in the same manner. It is the intention of the parties that each of them shall have as much meaningful contact with the Children as possible. Accordingly, the parties agree that they shall spend roughly equal time with the Children and they agree to continue to cooperate towards that end, with the parties having specific rights to be with the Children as follows:

(A)    The parties agree that Husband shall have the Children on Monday, Thursday and Friday of each calendar week and that Wife shall have the Children on Tuesday, Wednesday and Saturday of each calendar week. The parties shall alternate Sundays with the Children. While the Children are in school, the custody rights of the custodial party shall commence from after school on the day of such custody right through the morning of the day the other party has custody rights. While the Children are out of school, the custody rights of the custodial party shall commence at 6:00 p.m. on the day of such custody right through 10:00 a.m. on the morning of the day the other party has custody rights.

(B)    If the party who has rights to the Children encounters circumstances which make it necessary to hire a sitter for the Children for a period in excess of two (2) hours, such party agrees to first contact the other party giving such party the opportunity to sit with the Children.



(2)    Holidays. The parties shall have rights to be with the Children on specific holidays as follows, with any provisions herein regarding specific days of a holiday period overriding the more general provisions regarding such period:

(A)    The Children shall spend the following holidays with Wife during all odd numbered years, and with Husband during all even numbered years:  (i) New Year's Day (from 6:00 p.m. on December 31 through 3:00 p.m. on January 1); (ii) Spring Break (from 6:00 p.m. the last day of school prior to the beginning of the Spring Break for a consecutive period of four (4) days and nights); (iii) Easter (from 3:00 p.m. on Easter Sunday through 10:00 a.m. the following morning); (iv) Memorial Day; (v) Labor Day; (vi) Thanksgiving Day (from 6:00 p.m. the Wednesday before Thanksgiving Day through 3:00 p.m. on Thanksgiving Day); (vii) the Christmas holiday from school (from 10:00 a.m. on the morning of the fifth day of the Christmas holiday from school until the time the Children return to school); and (viii) Christmas Eve/Day (from 3:00 p.m. on Christmas Eve through 3:00 p.m. on Christmas Day).

(B)    The Children shall spend the following holidays with Wife during all even numbered years, and with Husband during all odd numbered years:  (i) New Year's Day (from 3:00 p.m. on January 1 through the 10:00 a.m. the following morning); (ii) Martin Luther King Jr.'s Birthday; (iii) Spring Break (from 10:00 a.m. on the morning of the fifth day of Spring Break until the time the Children return to school); (iv) Easter (from 6:00 p.m. on the Saturday before Easter through 3:00 p.m. on Easter Sunday); (v) Fourth of July; (vi) Halloween; (vii) Thanksgiving Day (from 3:00 p.m. on Thanksgiving Day through 10:00 a.m. the following day); (viii) the Christmas holiday from school (from 6:00 p.m. the last day of school prior to the beginning of the Christmas holiday from school for a consecutive period of four (4) days and nights); and (ix) Christmas Eve/Day (from 3:00 p.m. on Christmas Day through 10:00 a.m. the following day).

(C)    The parties shall alternate custody of the Children on teacher workdays and other days off from school or school holidays that are not specified herein and shall do so in such a manner as to allow each of them to have an equal amount of time with the Children during such times.

(3)    Special Occasions. The Children shall spend the following holidays, special occasions and birthdays each year with either Husband or Wife, as specified: Mother's Day Weekend with Wife, Father's Day Weekend with Husband, Wife's birthday (or, at Wife's option, the day before) with Wife, and Husband's birthday (or, at Husband's option, the day before) with Husband.

(4)    Children's Birthdays. Husband and Wife shall alternate celebrations of the Children's birthdays during each year so that each of them shall have the opportunity to have a birthday celebration for each Child every other year and without having to go any calendar year without being to celebrate the birthday of at least one of the Children, with one Child's birthday being celebrated by Husband during all odd-numbered years and by Wife during all even-numbered years (and with the other Child's birthday celebration being alternated



as provided herein). While the nature of the celebration shall be in the discretion of the party responsible for same, same shall be arranged so that the other party has a reasonable opportunity to attend. Each party shall have the exclusive right to be with the Children either on the day and night of, or the day and night before, their respective Birthdays.

      (d)    <u>Summer Vacation and Travel</u>. The parties shall the following rights to the Children with them during the summer vacation from school ("Summer Vacation") and when the parties travel:

      (1)    <u>Summer Vacation</u>. The parties shall have the right to have the Children with them during Summer Vacation for one (1) uninterrupted week, during which time the regularly scheduled custody and visitation rights specified herein shall be suspended, and the parties shall provide each other with reasonable notice of the time they desire to exercise such rights.

      (2)    <u>Travel</u>. The parties recognize the benefit to the Children of travel and visiting friends and relatives who live out-of-town or out of state. Accordingly, the parties shall have the right to have the Children travel with them at times when they are entitled to physical custody of the Children. The parties shall use best efforts to coordinate out-of-town travel with the Children so as not to unreasonably interfere with the rights of each other as set forth herein and they further agree that in no event shall they infringe upon the holiday and special occasion rights of each other as set forth herein without the agreement of the other party. In situations where infringing on the non-holiday and non-special occasion rights of each other is unavoidable, the parties will reasonably accommodate each other in making up any lost time.

      (e)    <u>Telephone Contact</u>. Each party shall have the right to telephone the Children at reasonable times and under reasonable circumstances when the Children are in the physical custody of the other. The Children shall also have the right to telephone the parties. The parties recognize the right to privacy of the Children while talking to the other party and agree to provide such privacy for the Children. The parties agree not to talk to each other on the telephone through the Children.

      (f)    <u>Access to Records</u>. The parties shall have equal access to the Children's school, medical, hospital, dental and law enforcement records, wherever they may be located, and shall have the right to discuss the Children with doctors, teachers, administrators, counselors, coaches, youth leaders and other educational and health care providers.

      (g)    <u>Health and Dental Issues</u>. The parties shall notify the other of any significant illness or accident or other circumstances materially affecting the health or welfare of the Children within a reasonable time after such circumstances come to their attention. The parties shall advise each other of the Children's need for educational, medical, hospital, psychological, counseling or dental services (including orthodontic needs) so that these matters may be mutually discussed and agreed between them; provided, however, that this provision is not intended to require either party to consult with the other regarding routine medical and dental services such as physical examinations, cleaning teeth or filling cavities in teeth.

(h)    <u>Residences of Parties; Limitation on Mobility</u>.  The parties shall at all times advise each other of their current residence and work addresses and telephone numbers to facilitate communications regarding the matters contained in this Agreement.  If either party changes his or her domicile, such party shall notify the other party of the proposed move at least two weeks prior to same, and shall thereafter provide the other party with such new address and telephone number, in writing, within one week of such change.  Neither party shall, without the consent of the other party, relocate such party's domicile to any location which is more than a thirty (30) mile radius from the existing domicile of the other party.

(i)    <u>Extracurricular Activities</u>.  The parties acknowledge and agree that the Children are and will be from time to time involved in certain extracurricular, sports or other activities offered by their schools (collectively, "Activities") and that participation in such Activities by the Children often requires the transportation of the Children to and from such Activities.  Without regard to which party has physical custody of the Children at any particular time during the year, the parties agree to cooperate with each other regarding transportation of the Children to and from Activities and the parties' attendance at same.  Each party recognizes the importance of their appearance and support of the Children at Activities and shall make reasonable efforts to attend such Activities when possible, regardless of which party is then exercising physical custody of the Children.

4.    <u>Child Support</u>.

(a)    <u>Ordinary and Everyday Expenses of the Children</u>.

(1)    <u>Monthly Child Support Payment Obligation</u>.  Each of the parties works and agrees to contribute their respective shares to the support of the Children and shall be responsible for all costs of the Children while they are in the respective custody.  Husband's 2001 adjusted gross income was approximately $200,000.00 and Wife's 2001 adjusted gross income was approximately $50,000.00.  Since the time of their separation, the parties have been making contributions to a joint bank account for the benefit of the Children and have been using the funds deposited in same for that purpose.  Since the parties have disparate incomes with Husband's child support obligation being greater than Wife's, Husband has agreed to contribute to a bank account to be maintained for the benefit of the Children and titled in the joint names of Husband and Wife (the "Children's Bank Account") the sum of $600.00 per month commencing on July 1, 2003 and continuing on the first day of each calendar month thereafter until the first of the Children reaches the age of eighteen (18) years, dies, marries, or becomes self-supporting, whichever first occurs (collectively, the "Initial Termination Date").  After the Initial Termination Date, Husband shall contributed to the Children's Bank Account the sum of $400.00 per month until the last of the Children reaches the age of eighteen (18) years, dies, marries, or becomes self-supporting, whichever first occurs (the "Final Termination Date") (the Initial Termination Date and the Final Termination Date are referred to hereinafter collectively as the "Termination Date").  Notwithstanding the foregoing, should either of the Children still be attending high school after reaching the age of eighteen (18) years, Husband's monthly child support obligation shall continue until such Child graduates from high school, but not beyond the age of twenty (20) years.



(2)    <u>Obligation to Make Additional Contributions</u>. The parties acknowledge and agree that while the foregoing amounts which are required to be contributed by Husband to the Children's Bank Account are anticipated to be enough to cover the expenses of the Children which are not otherwise covered by the parties when the Children are in their custody as specified herein. If such amounts prove to be insufficient to allow the Children to be supported in accordance with the standard of living they enjoyed prior to the divorce of the parties, however, the parties shall make a reasonable attempt to adjust Husband's contributions to compensate for any deficiency.

(b)    <u>Major Medical Insurance</u>. Husband, at his sole cost and expense, shall maintain major medical insurance for the benefit of the Children. If Husband participates in any dental insurance plan, he shall also provide same for the Children. Any medical, dental, orthodontic or other treatment of the Children not covered by insurance shall be divided equally between the parties.

(c)    <u>Extraordinary Expenses of the Children</u>. The following expenses are deemed by the parties to be extraordinary expenses of the Children which, unless otherwise specified, shall be paid by Husband if not covered by insurance, grants, scholarships, or any other collateral source:

(1)    <u>Camps</u>. Summer camps, sports camps, church camps or educational trips.

(2)    <u>Higher Education</u>. The payment of the cost of room and board, tuition, books, lab fees and other connected and required expenses at any public college, university, vocational or technical school (a "post-secondary school") within the university system of the Children's home state, or payment of an amount equal thereto (based on costs to attend a college or university within the university system of the Children's home state) towards the Children's education in the event the Children elect to attend a post-secondary school which is either private or not within the university system of their home state (hereinafter, "College Expenses"). The obligations of the parties provided herein with respect to each of the Children are contingent upon the Children maintaining a minimum "C" average during each semester or quarter they are enrolled. The obligation provided herein shall terminate for both parties with respect to each of the Children once they reach the age of twenty-two (22) years or graduate from college, whichever first occurs.

(3)    <u>Funding of Husband's Obligations</u>. So long the Children's Bank Account has a reserve of at least $3,000.00, the parties agree that Husband's obligation to make the foregoing payments for the benefit of the Children may be satisfied from the Children's Bank Account.

5.    <u>Property Settlement</u>.

(a)    <u>Cash Property Settlement</u>. Husband owns a business known as Mike Evans Homes, Inc. with which Wife has assisted him over the years (the "Company"). Husband



is in the real estate development business, and by virtue of same owns interests in various entities and commercial properties, and the parties together own various interests in commercial office space and investment and rental properties (collectively, the "Investment Properties"), all of which are subject to certain indebtedness. Wife is satisfied that she understands the ownership interests of both her and Husband (individually, and collectively) in the Investment Properties. After consideration of the relevant facts and circumstances involving the Company and the Investment Properties, Wife has agreed to accept the sum of $250,000.00 from Husband in exchange for her interest therein (the "Property Settlement Amount"), not as lump sum alimony but as part of the equitable division of the marital assets, same being intended to be a non-taxable equitable division of property incident to divorce. The Property Settlement Amount shall be paid by Husband to Wife as follows:

(1)    Transfer of Rental Homes.  Husband quitclaims to Wife all of his right, title and interest in the rental properties jointly owned by the parties located in Cumming, Georgia at 2085 Chattahoochee Road, 3115 Forest Circle and 3111 Forest Circle (the "Transferred Rental Properties") to Wife. The parties agree that the Transferred Rental Properties have an aggregate fair market value of $276,000.00, and that the net equity of the parties in the Transferred Rental Properties, after taking into account the outstanding indebtedness secured thereby, is $71,109.00.  The parties agree to execute all usual and customary deeds, affidavits and other closing documents necessary to consummate the disposition of the Transferred Rental Property in accordance with the foregoing. Husband shall receive a principal reduction in the Property Settlement Amount due from him to Wife in an amount equal to the net equity of the parties in the Transferred Rental Properties.

(2)    Promissory Note.  Husband has been making payments to Wife since January 1, 2003 in the amount of $2,109.64 per month as payment of the Property Settlement Amount, which sum represents the payment of principal and interest on the Property Settlement Amount amortized over a 15 year period at the rate of 6% per year. Husband shall receive as a credit against the Property Settlement Amount the sum of $5,223.00, which represents the principal amount of the payments he has made to Wife to date on account of the Property Settlement Amount. The outstanding balance of the Property Settlement Amount due from Husband to Wife after taking into account the foregoing principal reductions is $173,668.00 and shall be evidenced by a negotiable promissory note providing interest on the outstanding balance at the rate of 6% per year and for payments from Husband to Wife in the amount of $2,109.64 on the first day of each month commencing on July 1, 2003 and continuing until all principal and accrued interest has been paid in full. Such promissory note may be prepaid without penalty or premium, and Husband agrees to make the following principal reductions on account of such promissory note upon satisfaction of the terms and conditions set forth below: (i) upon the sale of the office building on Highway 141 in which Husband's company owns an interest (with Husband having no obligation to sell same), Husband shall pay 1/2 of the net proceeds to Wife as a principal reduction payment; and (ii) upon the sale of property in which Benefield Partners, LLC owns an interest, Husband shall pay Wife the sum of $25,000.00 as a principal reduction payment. Notwithstanding whether either of the foregoing sales occurs, Husband shall make a minimum principal reduction payment to Wife in the amount of $10,000.00 on or before December 31, 2003.



    (b)    <u>Marital Residence</u>. Wife shall be entitled to retain the marital residence of the parties located at 209 Pine Lake Drive, Cumming, Georgia 30040 (the "Marital Residence"). Husband acknowledges the receipt of good and valuable consideration for his share of the equity interest in the Marital Residence and hereby quitclaims all right, title and interest in the Marital Residence to Wife. The parties agree to execute all usual and customary deeds, closing statements, affidavits and other closing documents necessary to consummate the disposition of the Martial Residence in accordance with the foregoing.

    (c)    <u>Investment Properties</u>. Wife acknowledges the receipt of good and valuable consideration for her share of the equity interest in the Investment Properties and hereby quitclaims all right, title and interest in the Investment Properties (other than the Transferred Rental Properties she will be retaining) to Husband. The parties agree to execute all usual and customary deeds, affidavits and other closing documents necessary to consummate the disposition of the Investment Properties in accordance with the foregoing.

    (d)    <u>Household Furniture</u>. Husband quitclaims all of his right, title and interest in the furniture located in the household furniture owned by the parties to Wife.

    (e)    <u>Vehicles</u>. The parties agree as follows with respect to the vehicles owned by each of them:

    (1)    Title to that certain 2002 Dodge Durango shall belong to Wife as sole owner, and Husband hereby quitclaims all of his right, title and interest therein to Wife. Wife assumes the full and complete responsibility and liability for the satisfaction of any and all presently outstanding liens, encumbrances or amounts owed, both now and in the future, with respect to said vehicle and agrees to indemnify and hold Husband harmless from any and all liability of whatever kind or nature arising out of the debt on such vehicle.

    (2)    Title to that certain 1997 Dodge Ram Pick-up Truck shall belong to Husband as sole owner, and Wife hereby quitclaims all of her right, title and interest therein to him. Husband assumes the full and complete responsibility and liability for the satisfaction of any and all presently outstanding liens, encumbrances or amounts owed, both now and in the future, with respect to said vehicle and agrees to indemnify and hold Wife harmless from any and all liability of whatever kind or nature arising out of the debt on such vehicle.

    (f)    <u>Personal Property</u>. The parties have agreed on the division of all of the personal property of every kind, nature and description owned by them (whether jointly or separately), and they shall be entitled to any of such property in their respective possession as of the date hereof. Such property, in addition to all property transferred as herein provided, shall, upon the execution of this Agreement, be the sole and exclusive property of the party in possession thereof, and each party shall own and enjoy such property free and clear of all claims or rights of the other party. Each of the parties hereby quitclaims to the other all of such party's right, title and interest in and to the items designated in the preceding sentence as being transferred into the ownership and possession of the other.

9



(g)    Pension and Retirement Plans. Husband hereby waives all right, title and interest in and to any pension funds, stocks, 401(k) or other retirement plans or profit sharing plans, bank accounts, checking accounts, savings accounts, investment accounts or other financial accounts in Wife's name. Wife hereby waives all right, title and interest in and to any pension funds, stocks, retirement plans or profit sharing plans, bank accounts, checking accounts, savings accounts, investment accounts, or other financial accounts in Husband's name.

(h)    Transfers of Property. All Property transferred as herein provided, shall, upon the execution of this Agreement, be the sole and exclusive property of the party in possession thereof, and each party shall own and enjoy such property free and clear of all claims or rights of the other party. Each of the parties hereby quitclaims to the other all of such party's right, title and interest in and to the items designated in the preceding sentence as being transferred into the ownership and possession of the other.

(i)    Responsibilities Regarding Property. Whenever the parties by the terms of this Agreement transfer ownership or title to Property to one of the parties, such party hereby assumes responsibility for all incidents of ownership of such property, including, without limitation, maintenance and repair thereof, and the other party shall have no further responsibility whatsoever regarding same. The parties shall execute such bills of sale, deeds, titles or other documents of transfer as may be reasonably requested by the other party or as may be reasonably necessary to transfer title to such property to the other, and shall indemnify and hold each other harmless from any and all liability of whatsoever kind or nature arising out the possession or ownership of such property.

(j)    Compliance with Tax Requirements. All transfers contained herein are done so with the intention of making tax free transfers of marital assets as contemplated by the Internal Revenue Code of 1986, as amended. Specifically, the parties agree that the transfers described herein will be deemed transfers "incident to a divorce" and therefore non-taxable.

6.    Support; Alimony and Separate Maintenance. With respect to separate maintenance between the parties, each of them waives and renounces any and all right or claim such party may have against the other as to alimony or support, now and in the future, each hereby accepting the terms and conditions of this Agreement in full settlement thereof.

7.    Indebtedness.

(a)    Joint Debts; Refinancing. Each party hereby assumes the sole responsibility for the payment of any obligations on any Property they are receiving pursuant to this Agreement, with Wife expressly assuming the indebtedness on the Marital Residence and Husband expressly assuming the indebtedness on the Company and the Investment Properties. From and after the date of this Agreement, neither party shall use the name, credit or other qualifications of the other in applying for new credit, incursion of indebtedness or other indulgences. The parties shall use diligent and good faith efforts to refinance any joint indebtedness on Property which has been transferred to them pursuant to this Agreement, and in any event, Husband shall have refinanced all indebtedness with respect to which Wife is jointly

indebted within a period of two (2) years from the Effective Date of this Agreement, with his failure to do so causing the interest rate due on the Property Settlement Promissory Note to be adjusted from its then current rate to a rate which is the then current rate, plus four percent (4%).

      (b)    <u>Non-Joint Debts</u>. Wife agrees to and does assume full and complete responsibility and liability for all credit cards and other debts which are in her sole name. Husband agrees to and does assume full and complete responsibility and liability for the payment of all credit cards or other debts which are in his sole name. Wife shall hold harmless and indemnify Husband for any indebtedness in her sole name to the extent that Husband is ever called upon to pay such amounts. Husband shall hold harmless and indemnify Wife for any indebtedness in his sole name to the extent that Wife is ever called upon to pay such indebtedness. Husband and Wife further agree that any indebtedness incurred by either party after the date of separation of the parties shall be the sole responsibility of the party incurring said debt, and each shall hold the other harmless for any liability of the other for any such indebtedness.

      9.    <u>Income Tax Provisions</u>. Husband and Wife agree to file separate federal and state income tax returns for the 2002 tax year. Except as otherwise provided herein, Husband shall be responsible for any taxes, penalties, or interest due from either of the parties that is not covered by withholding that has been taken from the paychecks. In the event of a refund Wife shall receive an amount equal to one-half of said federal and state tax refund; provided, however, that if Husband assumes all of such tax liabilities as authorized herein, the entire refund, if any, shall belong to Husband. Husband shall be responsible for the accounting fees for the preparation of said returns and any legal or accounting fees resulting from any future audit of said return and he shall provide Wife with signed copies of such state and federal returns. Both parties warrant and represent that all joint tax returns heretofore filed by the parties are true and complete, that all liabilities thereof have been fully paid, and there is no pending audit or examination of any of these returns. The parties shall cooperate in the defense of any proceeding to assess any tax liability, or in the institution or prosecution of any claim or action for refund, in connection with those returns. Both parties shall have the right to institute and prosecute all such claims or actions for refund. All refunds recovered with respect to those returns covered by this subparagraph subsequent to the execution of this agreement shall be split equally by both parties and both parties shall properly sign or endorse any receipts, vouchers, or refund checks required to effect the collection of said refunds. Husband and Wife agree to indemnify and shall hold each other harmless from any assessment, penalty, fine or underpayment of federal or state income taxes owed for any taxable year during which the parties filed a joint return attributable to that party's income, failure to report, or other improper action. The parties shall file separate returns for the 2003 tax year.

      8.    <u>Will and Will Contract</u>. Within ninety (90) days of the execution of this Agreement, Husband shall execute a Last Will and Testament which provides, in form and substance, for the bequest of all of Husband's right, title and interest in and to the Company and the Investment Properties to the Children, in trust (with Wife as trustee), and which includes such other and further provisions and conditions as Husband shall deem appropriate. Husband further agrees not to change any of the foregoing provisions of his Will so long as he is obligated to pay




child support hereunder; provided, however, that this prohibition shall not prevent Husband from making other changes to his Will as he deems appropriate. Husband shall provide a copy of his Will, as well as copies of any codicils thereto made by Husband, to Wife for her review, comment and input. As part of the consideration for entering in this Agreement, Husband agrees that his Will shall include a provision authorizing and ordering his executors, trustees and/or personal representatives to satisfy his obligations hereunder. If Husband fails to include such a provision, or fails to comply with any other provision of this Paragraph, Wife and/or the Children shall have a claim therefor which will constitute a first charge against the assets of Husband's estate, and his executors, administrators, trustees and other personal representatives of his estate shall be bound by his obligations as specified herein.

9.   Dependency Exemption. Each of Husband and Wife shall be entitled to claim a dependency exemption as provided in Section 151 of the Internal Revenue Code of 1986, as amended, for one Child each for the year 2003 and subsequent years.

10.   Incorporation by Reference in Judgment or Decree. This Agreement shall be incorporated by reference into any judgment or decree entered by any court of competent jurisdiction in connection with the legal separation or divorce of the parties. Notwithstanding such incorporation, this agreement shall survive and be enforceable independently of such judgment or decree. The parties expressly acknowledge and agree that this Agreement is entered into settlement of all issues between the parties with respect to property division and child custody and that it is intended to constitute a full, final and binding settlement and agreement between the parties with respect to the subject matter hereof to the greatest extent permitted by law.

11.   Attorney Representation; Payment of Fees; No Tax Advice. The parties acknowledge and agree that they have read this entire Agreement before signing same and that they have ascertained and weighed all of the facts and circumstances likely to influence their judgment herein, that they have had the opportunity to obtain legal advice independently of each other, that they have had the opportunity to be duly apprized of their respective legal rights, and that they understand clearly and assent to all the provisions hereof. Wife has consulted with and has obtained the advice, counsel and representation of Larry C. Oldham, the counsel of her choice, with regard to her rights, remedies, privileges and obligations pursuant to this Agreement, and Husband has consulted with and has obtained the advice, counsel and representation of counsel of his choice, with regard to his rights, remedies, privileges and obligations pursuant to this Agreement (or has elected no to do so). Husband has agreed to pay the fees due to Wife's counsel up to $1,500.00, and Wife shall be responsible for the payment of any amounts due that are in excess of same. Both parties acknowledge and agree that they have not been advised or counseled by their respective counsel as to the Federal and State income, estate, or gift tax implications or effects of this Agreement, and that they have been (and are hereby) advised to seek professional tax advice concerning such tax consequences of this Agreement.

12.   Voluntary Execution. The parties acknowledge that they have entered into this Agreement freely and voluntarily and without coercion of any kind from any source whatsoever, has weighed all the facts, conditions and circumstances likely to influence their respective




judgment, are fully aware of the income, assets, present and projected earnings and general
financial condition of the other party, have given due consideration to the present and future need
of the parties, have given due consideration to such matters and that they have read, clearly
understand and consent to all the provisions hereof, and believe this Agreement to be fair, just,
reasonable, satisfactory, adequate and in keeping with the respective modes of living, reasonable
requirements and stations in life. The parties affirm that this Agreement is not the result of any
fraud, duress or undue influence exercised by either party upon the other or by other persons
upon either, and, accordingly, accept same in lieu of and in full and final settlement and
satisfaction of any claims or rights that either of them may now or hereafter have against the
other party for support, maintenance or property settlement.

13.    Other Claims. This Agreement shall be *res judicata* as to all claims compulsory,
permissible or otherwise, which exist between the parties at the time this Agreement was signed
and which might lawfully have been raised. Accordingly, except for what is expressly set out
herein, each of the parties does hereby waive and renounce any and all further claims that each
might have against the other, and they do each hereby quitclaim and release any and all property
titled in the name of or in the possession of the other and not specifically dealt with in this
Agreement.

14.    Paragraph Headings. The headings enumerated at the beginning of each
Paragraph in this Agreement and the title of same are for convenience and reference purposes and
shall not, in any manner, constitute terms or conditions of this Agreement, nor shall they be
applicable to any interpretation of the intent or meaning of any part of this Agreement.

15.    Severability. If any Paragraph, provision or portion of any provision of this
Agreement shall be held to be void, invalid or unenforceable under or contrary to the laws of the
State of Georgia, or of any country, state or other jurisdiction, for any reason, it shall not in any
way invalidate, affect or impair the remainder of this Agreement, it being the intention of the
parties that such void, invalid or unenforceable Paragraph, provision or portion thereof shall be
deemed modified or omitted to the extent necessary to achieve validity or enforceability, and that
this Agreement, with such Paragraph, provision, or portion thereof, so modified or omitted, shall
be binding upon and enforceable against both parties to the extent permitted by law, and shall
remain in full force and effect, and any such invalid or unenforceable Paragraph, provision, or
portion of Paragraph or provision shall nevertheless be binding and remain in full force and
effect in any country, state or jurisdiction in which such provision is valid, legal and enforceable.
The parties do not intend by including this provision to imply that either of them or their counsel
believe any portion of this Agreement to be void, invalid or unenforceable.

16.    Construction of this Agreement. Should any provision of this Agreement require
interpretation or construction, both parties agree that any presumption which may exist that a
document or agreement is to be interpreted or construed more strictly against the party who or
which prepared such document or agreement shall not apply, it being agreed that both parties
have participated and/or had the opportunity to participate in the preparation of all of the
provisions of this Agreement. This Agreement to the largest extent possible was drafted in plain
language so that it could be easily understood by non-lawyers.

17.    Revocation of Prior Agreements. Immediately upon the execution of this Agreement, any prior Agreements executed by the parties herein in contemplation of the settlement of any of the claims in the above-styled Action shall be void.

18.    Binding Effect. Except as otherwise stated herein, this Agreement and all of the obligations and covenants hereunder shall bind the parties hereto and the respective heirs, executors, administrators, legal representatives, and assigns of the parties, and it shall inure to the benefit of the parties and the respective heirs, legatees, executors, administrators, legal representatives, trustees, and assigns of the parties.

19.    Entire Agreement; No Other Representations. This Agreement constitutes the full and complete agreement between the parties with respect to the subject matter hereof and hereby supersedes all prior oral or written understandings between the parties regarding same. Each of the parties acknowledges that neither of them has been induced to execute this Agreement by reason of any representation or promise by or on behalf of the other party not herein contained, nor by reason of any failure by or on behalf of the other party to divulge any fact or facts, and that neither of the parties will, under any circumstances, assert or claim any invalidity of this Agreement, or any provision thereof, by reason of any such representation, promise or failure to divulge which may be claimed to exist.

20.    Choice of Law. This Agreement is made and shall be executed and entered into in the State of Georgia, and it is the intention and agreement of the parties that the validity, interpretation and effect of this Agreement, and of any and all of the rights of the parties hereunder, shall be governed by, construed and interpreted in accordance with the laws of the State of Georgia.

21.    Discovery. The parties acknowledge that they have the right to compel discovery and inspection of the other's books and records, business and personal, and the right to have accountants, appraisers or others investigate, appraise or evaluate the other's business and property interests. Each party has expressed the conviction that he or she knows the nature, extent and value of the other party's property and business interests. The parties acknowledge their understanding of their discovery rights and they have knowingly not taken any further steps, and waive the right to take such steps, themselves or through others, in connection with discovery, inspection, investigation, appraisal or evaluation of the other's business or property interests.

22.    Mutual Release. After all transfers provided for herein have taken place, each of the parties shall have, own, and enjoy, independently of any claim or rights of the other party, all items of property referenced in this Agreement of every kind, nature, and description and wherever situated or which may hereafter belong or come to Husband and Wife with full power to dispose of the same; and, except as otherwise expressly provided herein, the parties shall and do mutually remise, release, and forever discharge each other from any and all actions, suits, debts, claims, demands, and obligations whatsoever, both in law and in equity, which each of them ever had, now has, or may hereafter have against the other, upon or by reason of any matter, cause, or thing up to the date of execution of this Agreement; and

Except for those rights and claims for which this Agreement provides, each party hereby waives and releases his and her respective rights and claims against the other or the estate of the other including, but not limited to, alimony, division of property, dower, curtsey, year's support, and any rights of inheritance pursuant to the laws of intestacy, which rights and claims he or she may have against the other or the estate of the other by reason of the marriage of the parties. Both parties waive any legal right he or she may have to be appointed executor or administrator of the estate of the other. All property received or retained by either party under this Agreement, whether or not such property is specifically mentioned herein, shall be and remain the separate property of the party receiving or retaining that property and that property shall be free from any claim by the other or his or her estate.

23.    Enforcement of Covenants Independently. Unless otherwise specifically provided in this Agreement, each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently irrespective of any of the other rights and obligations set forth herein.

24.    Enforcement. In the event of any breach of the terms of this Agreement, the offending party shall be subject to attachment for contempt of court or other available remedies under the laws of the State of Georgia or in the state of enforcement.

25.    Effective Date. This Agreement shall become fully effective and binding upon the parties on the date first written above, which shall be the date of execution of this Agreement.

26.    No Waiver; Modifications. Any waiver by either party of any provisions of this Agreement, or of any rights hereunder, or any failure of either party to insist on any one or more instances upon the strict performance of any of the terms or provisions, or portions thereof, of this Agreement on the other party's part to be performed or to exercise any option or make any election herein contained or provided for, shall not be construed as a permanent or continuing waiver, or a relinquishment for the future of any such term, provision, option or election, or portion thereof, and the same shall continue in full force and effect. Same shall also not prevent or stop such party from thereafter enforcing such term, provision, option, election or portion thereof. No waiver or relinquishment shall be deemed to have been made by either party, unless in writing duly signed and acknowledged by such party. This Agreement may not be modified except by a written agreement signed by the party against whom enforcement is sought.

27.    Future Cooperation. The parties covenant and agree to execute and deliver such documents as may be requested by any other party or as may be legally necessary or otherwise appropriate to carry out the terms of this Agreement.

[SIGNATURES BEGIN ON NEXT PAGE]



IN WITNESS WHEREOF, the parties have hereunto set their hands and affixed their seals to this Agreement as of the day and year first above written.

Notary Public

[Notary Seal]

My commission expires:_____

HUSBAND:

_____(SEAL)
Mike A. Evans

Notary Public

[Notary Seal]

My commission expires:_____

WIFE:

_____(SEAL)
Julie J. Evans

L:\DOCS\LCOPC\X-MISC\DIVORCE\7EVANS.DV5                    16

```
            U. S. BANKRUPTCY COURT
          NORTHERN DISTRICT OF GEORGIA
             GAINESVILLE DIVISION

             # 00270208 - KJ
             November 29, 2010


Code       Case No     Qty      Amount By

AD1        10-02188     1     $250.00 CK
   Judge  - Not Assigned []
   Debtor - M. A. EVANS


TOTAL:                        $250.00


FROM: Larry C. Oldham
      416 Pirkle Ferry Road, Suite K-500
      Cumming, GA 30040
```

Page 1